# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

TI'A O. RIFE,

                       Plaintiff(s),

    -against-

ISLAND PEER REVIEW ORGANIZATION, INC. d/b/a
IPRO, DEBORA SANTIAGO, DONNA RODRIGUEZ,
VALERIE LECOIN, and ALLISON KU,

                       Defendant(s).

---

Index No. _____

**Summons**

Date Index No.
Purchased: _____

---

To the above named Defendant(s):
ISLAND PEER REVIEW ORGANIZATION, INC. d/b/a IPRO, DEBORA SANTIAGO,
DONNA RODRIGUEZ, VALERIE LECOIN, and ALLISON KU

    You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

    The basis of venue is Defendant Island Peer Review Organization, Inc. d/b/a IPRO's principal place of business in Nassau County, which is located at 300 Jericho Quadrangle, Suite 300, Jericho, New York 11753, pursuant to N.Y. CPLR § 503(a) and (c).
Dated: New York, New York
       June 10, 2026

                                 **Joya Law Firm**
                                 by _____
                                 Kamran Joya
                                 Attorneys for Plaintiff
                                 Ti'a O. Rife

                                 Joya Law Firm
                                 175 Greenwich Street, 38th Floor
                                 New York, NY 10007
                                 Phone: 415-302-9437

        Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

Case 1:26-cv-04115   Document 1-1   Filed 07/09/26   Page 3 of 19 PageID #: 7

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

TI'A O. RIFE,

                Plaintiff,

          -against-

ISLAND PEER REVIEW ORGANIZATION,
INC. d/b/a IPRO; DEBORA SANTIAGO;
DONNA RODRIGUEZ; VALERIE LECOIN;
and ALLISON KU,

                Defendants.

Index No. _____/2026

VERIFIED COMPLAINT

Plaintiff Demands
a Trial by Jury

Plaintiff Ti'a O. Rife (also known as Ti'a Joseph) ("Plaintiff" or "Ms. Rife"), by and through her attorneys, Joya Law Firm, as and for her Verified Complaint against Defendants Island Peer Review Organization, Inc. d/b/a IPRO ("IPRO"), Debora Santiago, Donna Rodriguez, Valerie Lecoin, and Allison Ku (the "Individual Defendants," and together with IPRO, "Defendants"), alleges upon knowledge as to herself and her own acts, and upon information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

1. This is an action for disability discrimination, failure to provide reasonable accommodation, failure to engage in the cooperative dialogue mandated by New York law, and retaliation, brought principally under the New York State Human Rights Law, N.Y. Executive Law § 290 et seq. (the "NYSHRL"), and, secondarily, under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. (the "FMLA").

2. Plaintiff was born without her left hand. For more than three years she has performed her job ably and without discipline, earning the highest rating ("5") on her IPRO performance evaluations. (Ex. B.) That Plaintiff kept performing, however, is neither a defense to this action nor evidence that she needed no accommodation. Plaintiff performed only by overusing her sole working arm until it broke down — developing the disabling injuries described below — and by spending her own accrued paid leave to treat those injuries. Nor did Plaintiff acquiesce: she raised her disability and her need for accommodation repeatedly, beginning in September 2024 and continuing through 2026. Her capability and dedication did not relieve IPRO of its independent statutory duty, triggered the moment it learned of her disability, to engage her in a good-faith cooperative dialogue about how she could continue to perform safely and to issue a written determination — a duty IPRO has never discharged.

2

Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

Case 1:26-cv-04115   Document 1-1   Filed 07/09/26   Page 4 of 19 PageID #: 8

3. Under N.Y. Executive Law § 296(3)(b), an employer's duty to engage in a "cooperative dialogue" is triggered not by any particular "magic words" or formal request, but as soon as the employer "has notice that" an employee "may have" a need for accommodation on account of a disability. IPRO had exactly that notice no later than September 17, 2024, when Plaintiff personally told Defendant Santiago — the senior IPRO manager in charge of her department — that she was born without her left hand and that she was concerned the disability "could affect her employment." Santiago's response was not a dialogue. It was, in substance, "as long as you can do your job, I don't have a problem with your arm" — a statement that did the opposite of what the statute commands. It closed the conversation and shifted the entire burden of the disability onto Plaintiff.

4. For the next fourteen months IPRO did nothing. It imposed on Plaintiff the same daily case-production quotas it imposed on two-handed employees, requiring her to perform a high-volume, computer-intensive job using only her right hand. As the direct and foreseeable consequence of that unaccommodated overuse, Plaintiff developed disabling secondary injuries to her sole working arm: frozen-shoulder syndrome of the right shoulder, tendinitis (lateral epicondylitis) of the right elbow, and carpal-tunnel syndrome of the right hand. (Ex. E.)

5. Even after Plaintiff formally raised accommodation with Human Resources on December 3, 2025, took medical leave to treat the injuries IPRO's inaction had caused, and submitted repeated physician notes, IPRO never conducted the statutory cooperative dialogue and never issued the written final determination the statute requires. As late as the May 21, 2026 meeting memorialized in Plaintiff's contemporaneous May 26, 2026 email — receipt of which IPRO acknowledged without correction — IPRO's Head of Human Resources admitted she was unfamiliar with Plaintiff's earlier disclosures, did not know Plaintiff's job duties, and did not know how much typing the role required, and could offer only to "look into" dictation software and "another department." (Ex. F.) That is proof, in IPRO's own words, that twenty months after notice the cooperative dialogue had still not occurred.

6. Plaintiff brings this action to remedy these violations and to recover back pay and the value of the paid leave she was forced to spend on IPRO's failure to accommodate, compensatory damages for her physical injuries and emotional distress, punitive damages, civil penalties, attorneys' fees, and declaratory and injunctive relief.

## THE PARTIES

7. Plaintiff Ti'a O. Rife is a natural person and, at all relevant times, an "employee" of IPRO within the meaning of the NYSHRL (N.Y. Exec. Law § 292(6)), Section 504 of the Rehabilitation Act, and the FMLA (29 U.S.C. § 2611(3)). Plaintiff performs her duties for IPRO's Jericho, New York office on a remote basis.

8. Plaintiff is a person with a "disability" within the meaning of N.Y. Executive Law § 292(21) and Section 504. She was born without her left hand — a congenital, permanent, and

3

Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

Case 1:26-cv-04115     Document 1-1     Filed 07/09/26     Page 5 of 19 PageID #: 9

demonstrable physical impairment (a below-the-elbow limb difference). She additionally suffers from frozen-shoulder syndrome of the right shoulder, lateral epicondylitis (tendinitis) of the right elbow, and carpal-tunnel syndrome of the right hand, each of which is an independently qualifying disability. IPRO's own FMLA certification records that Plaintiff is "unable [to] use [her] upper extremity" and has a "below elbow amputation," and the accompanying disability-benefits form lists "R[ight] shoulder pain" and "R[ight] hand pain." (Ex. C.)

9. Defendant Island Peer Review Organization, Inc. d/b/a IPRO is, upon information and belief, a New York not-for-profit corporation with its principal place of business at 300 Jericho Quadrangle, Suite 300, Jericho, New York 11753, in Nassau County. IPRO performs Independent Dispute Resolution work for the Centers for Medicare & Medicaid Services ("CMS") and is, upon information and belief, a recipient of federal financial assistance within the meaning of Section 504, 29 U.S.C. § 794. IPRO employs more than four persons and is a covered "employer" under the NYSHRL (N.Y. Exec. Law § 292(5)); it employs more than fifty persons within seventy-five miles of Plaintiff's worksite and is a covered "employer" under the FMLA (29 U.S.C. § 2611(4)).

10. Defendant Debora Santiago is, upon information and belief, a senior manager of IPRO in charge of its CMS Independent Dispute Resolution ("IDR") department, holding the title of Assistant Vice President and/or Senior Director, IDR, with offices in Jericho, New York. At all relevant times Ms. Santiago supervised Plaintiff, received actual notice of Plaintiff's disability, and had authority to initiate the accommodation process. She personally participated in the conduct alleged herein.

11. Defendant Donna Rodriguez is, upon information and belief, the Head of Human Resources at IPRO, with offices in Jericho, New York. At all relevant times Ms. Rodriguez had authority over IPRO's response to Plaintiff's accommodation requests, leave, and return-to-work process, and personally participated in the conduct alleged herein.

12. Defendant Valerie Lecoin is, upon information and belief, the Director of Human Resources at IPRO, with offices in Jericho, New York. On December 3, 2025, Plaintiff personally requested reasonable accommodation from Ms. Lecoin. Ms. Lecoin personally participated in the conduct alleged herein.

13. Defendant Allison Ku is, upon information and belief, IPRO's Employee Benefits Manager, with offices in Jericho, New York. At all relevant times Ms. Ku administered Plaintiff's leaves and return-to-work process and the disposition of her physician-imposed restrictions, and personally participated in the conduct alleged herein.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over Plaintiff's NYSHRL claims pursuant to N.Y. Executive Law § 297(9), which authorizes a person aggrieved by an unlawful discriminatory practice to bring a civil action in any court of competent jurisdiction.

4

Case 1:26-cv-04115    Document 1-1    Filed 07/09/26    Page 6 of 19 PageID #: 10

15. This Court has concurrent subject-matter jurisdiction over Plaintiff's claims under Section 504 of the Rehabilitation Act and the FMLA. State courts of general jurisdiction are presumed competent to adjudicate federal claims absent a contrary congressional directive. See Tafflin v. Levitt, 493 U.S. 455 (1990); Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820 (1990).

16. Venue is properly laid in Nassau County pursuant to N.Y. CPLR § 503(a) and (c) because IPRO maintains its principal office at 300 Jericho Quadrangle, Suite 300, Jericho, New York 11753, in Nassau County, and because a substantial part of the events and omissions giving rise to Plaintiff's claims — the imposition of unaccommodated quotas, the receipt of Plaintiff's disability disclosure and accommodation requests, the administration of her leave, and the failure to conduct the cooperative dialogue — occurred in and emanated from Nassau County.

17. Plaintiff has not filed any complaint concerning these matters with the New York State Division of Human Rights or any local commission on human rights. The election-of-remedies bar of N.Y. Executive Law § 297(9) is therefore inapplicable. Contemporaneously with this filing, Plaintiff has filed a charge with the U.S. Equal Employment Opportunity Commission to preserve her rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), and intends to seek leave to add ADA claims upon issuance of a Notice of Right to Sue. Plaintiff's Section 504 and FMLA claims do not require administrative exhaustion.

## THE NEW YORK NEXUS OF PLAINTIFF'S CLAIMS

18. The discriminatory conduct alleged herein had its impact in New York and emanated from New York. The NYSHRL protects non-residents where the discriminatory conduct has an impact within New York; the controlling test is one of impact, not residence. See Hoffman v. Parade Publications, 15 N.Y.3d 285 (2010); Syeed v. Bloomberg L.P., 41 N.Y.3d 446 (2024).

19. Plaintiff's New York nexus is direct and multi-pronged: (a) IPRO is a New York corporation, headquartered in New York; (b) every decision-maker relevant to this action — Santiago, Rodriguez, Lecoin, and Ku — is employed in and acted from New York; (c) Plaintiff was hired in and from New York, onboarded from New York, and her wages, tax withholdings, and W-2 are processed and issued from New York; (d) the federal CMS IDR contract under which Plaintiff works is administered from New York; (e) the daily quotas that caused Plaintiff's injuries were set and enforced from New York; (f) IPRO's decisions to impose those quotas without accommodation, to withhold the cooperative dialogue, and to administer Plaintiff's leave and restrictions were all made in New York; and (g) Plaintiff's September 17, 2024 disability disclosure occurred in connection with an in-person IPRO company event held in New York, which Plaintiff traveled to New York to attend.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Strong Performance Record

5

Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

Case 1:26-cv-04115   Document 1-1   Filed 07/09/26   Page 7 of 19 PageID #: 11

20. Plaintiff began working for IPRO on or about September 22, 2022, initially through a staffing agency, as a Project Facilitator in IPRO's Corporate Programs department. On or about January 17, 2023, IPRO converted her to a permanent, full-time employee. (Ex. A.)

21. IPRO thereafter assigned Plaintiff to its CMS IDR department as a Claims Specialist, the position she holds today. The role consists almost entirely of computer-based processing and resolution of Medicare-related disputes and requires extensive, sustained use of the hands for typing and related data entry.

22. Plaintiff has at all times performed the essential functions of her position. She has never been disciplined, written up, demoted, suspended, or placed on a performance-improvement plan. Her IPRO performance evaluations rate her at the highest level ("5") across the measured categories, with comments praising her dependability and command of departmental policies and procedures. (Ex. B.)

**B. Plaintiff's Disability and IPRO's Actual Notice of It (September 17, 2024)**

23. Plaintiff was born without her left hand. The condition is obvious, observable, and permanent, and requires Plaintiff to perform all of her computer-based work with her right hand alone.

24. In or about August 2024, in advance of an in-person IPRO 40th-anniversary company event held in New York on September 17, 2024, Plaintiff personally disclosed her congenital limb difference to Defendant Santiago. Plaintiff told Ms. Santiago that she did not know whether IPRO had previously been informed of her disability and that she was concerned the disability "could affect her employment." IPRO's own records confirm both Santiago's seniority over the IDR department and the date of the company event. (Ex. A.)

25. In response, Defendant Santiago said, in substance and effect, "as long as you can do your job, I don't have a problem with your arm." Santiago did not initiate any cooperative dialogue or interactive process, did not refer Plaintiff to Human Resources, did not document the disclosure, and did not offer or explore any reasonable accommodation.

26. Santiago's statement had a lasting and coercive effect on Plaintiff. From the moment she heard "as long as you can do your job," Plaintiff reasonably understood her continued employment to be conditioned on performing the unmodified, two-handed job with one hand, and she was placed in continuing fear that if her productivity slipped — including because of the very disability she had just disclosed — she would be terminated. That fear compelled Plaintiff to keep meeting the same quotas as fully two-handed employees at the expense of her physical health, rather than press for the accommodation IPRO was obligated to explore.

27. From no later than September 17, 2024, IPRO had actual notice, through its agent Santiago, that Plaintiff had a disability and that she "may have" a need for accommodation — the precise circumstance that triggers an employer's duty to commence a cooperative dialogue under N.Y. Executive Law § 296(3)(b). IPRO does not dispute that it became aware of Plaintiff's physical condition on September 17, 2024.

Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

Case 1:26-cv-04115    Document 1-1    Filed 07/09/26    Page 8 of 19 PageID #: 12

28. Whatever IPRO may now contend was or was not said at the September 17, 2024 disclosure, IPRO's own subsequent conduct proves the point: for the more than twenty months that followed, IPRO never engaged Plaintiff in any cooperative dialogue, never explored or offered any accommodation for her underlying limb-difference disability, and continued to hold Plaintiff to the same daily productivity quotas and accountability as employees with two working hands. The absence of the legally required dialogue is established by IPRO's conduct over time, independent of the precise words exchanged.

## C. IPRO Imposes Unaccommodated Production Quotas, Causing Secondary Injuries

29. In the IDR department, IPRO measured and enforced daily key-performance-indicator ("KPI") quotas keyed to the number of cases a Claims Specialist resolved per day. IPRO required Plaintiff to meet the same daily quotas as fully two-handed Claims Specialists, notwithstanding its knowledge that Plaintiff performed all of her work with one hand.

30. IPRO did not modify Plaintiff's quotas, extend her deadlines, provide assistive or voice-recognition software, supply ergonomic equipment, restructure marginal functions, or offer any other accommodation to account for the fact that Plaintiff was performing a two-handed job with one hand.

31. As the direct and foreseeable consequence of the unaccommodated, repetitive, single-handed overuse of her sole working extremity, Plaintiff developed (a) frozen-shoulder syndrome of the right shoulder; (b) tendinitis (lateral epicondylitis) of the right elbow; and (c) carpal-tunnel syndrome of the right hand. Plaintiff's medical records document right-shoulder pain and right lateral epicondylitis and the resulting course of diagnostic imaging and physical therapy. (Ex. E.)

## D. Plaintiff's December 3, 2025 Accommodation Request to Human Resources

32. On December 3, 2025, Plaintiff met with Defendant Lecoin, IPRO's Director of Human Resources, and expressly raised her disability and her need for accommodation, including her concern that she was falling behind on her cases because of the pain in her working arm.

33. Rather than commence the statutory cooperative dialogue, Ms. Lecoin told Plaintiff that she would have to complete a form and that Lecoin would have to "check the file" to see whether Plaintiff had previously disclosed a disability — notwithstanding that Plaintiff had disclosed her disability to Ms. Santiago more than fifteen months earlier. Plaintiff explained that she was not willing to sign paperwork locking her into a fixed case quota before she had been examined by her physician.

34. Providing a blank form and a policy is not the cooperative dialogue that N.Y. Executive Law § 296(3)(b) requires. The statute obligates the employer affirmatively to engage in a good-faith discussion of the employee's accommodation needs, of potential accommodations and alternatives, and of any difficulties they pose for the employer, and then to issue a written final determination. IPRO did none of these things following the December 3, 2025 meeting, and Ms. Lecoin never communicated any decision or followed up.

Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

Case 1:26-cv-04115   Document 1-1   Filed 07/09/26   Page 9 of 19 PageID #: 13

### E. Plaintiff's Medical Leave and IPRO's Notice of the Physical Basis of Her Condition

35. On or about December 4, 2025, Plaintiff was examined by her physician, who ordered diagnostic testing. On or about December 5, 2025, Plaintiff's physician directed her to cease work, and Plaintiff began a medical leave protected in part by the FMLA.

36. In connection with that leave, Plaintiff's health-care provider completed an FMLA Certification (Form WH-380-E) and a New York disability-benefits claim. Those documents — in IPRO's possession — state that Plaintiff is "unable [to] use [her] upper extremity," references her "below elbow amputation," and identify "R[ight] shoulder pain" and "R[ight] hand pain." (Ex. C.) IPRO thus had documentary medical notice, no later than December 2025, of both Plaintiff's limb-difference disability and the right-side overuse injuries it had caused.

37. Plaintiff's FMLA entitlement was exhausted on or about January 13, 2026, after which Plaintiff was carried on a medical leave of absence through January 26, 2026.

38. On or about January 8, 2026, Plaintiff emailed Defendants Rodriguez and Lecoin to ask whether the exhaustion of her FMLA leave would affect her employment. On January 12, 2026, Defendant Rodriguez replied that it "should not have any impact on [Plaintiff's] employment status based on the information [she] provided." (Ex. F.)

39. On January 22, 2026 — only four days before Plaintiff's scheduled return — Defendant Ku advised Plaintiff for the first time that a medical-clearance letter would be required before her return and that any restrictions had to be noted on the return-to-work document. Plaintiff had not previously been told of this requirement and had not been given any form; she asked Ms. Ku to send the form to her immediately. (Ex. D, F.)

40. Plaintiff returned to work on January 26, 2026 pursuant to a physician's note restricting her to 10–15 cases per day for an eight-week treatment period. Defendant Ku confirmed in writing that the restriction had been "approved." (Ex. D.)

### F. IPRO Treats the Disability as Plaintiff's Problem to Manage, Note by Note

41. On March 18, 2026, Defendant Ku sent Plaintiff a "friendly reminder" that her "accommodation is scheduled to end this week Friday March 20." Plaintiff responded that her physician had set an end date of March 23, 2026 and, on March 19, 2026, transmitted an updated work-restrictions letter from her provider extending the 10–15-case limit for another eight weeks. On March 24, 2026, Defendant Rodriguez confirmed that "[t]he request to extend the accommodation for 8 weeks has been approved effective 3/23/26." (Ex. D.)

42. Throughout this period, IPRO required Plaintiff to use her own accrued paid time off and sick time to attend medical treatment for the very injuries IPRO's failure to accommodate had caused, rather than granting intermittent leave, flexible scheduling, or any other accommodation that would have spared her benefits. IPRO thereby shifted onto Plaintiff the financial cost of treating an injury of IPRO's own making.

Case 1:26-cv-04115    Document 1-1    Filed 07/09/26    Page 10 of 19 PageID #: 14

43. At no point did IPRO treat any of these physician notes as the occasion to conduct the cooperative dialogue or to issue a written final determination. IPRO treated each note as a discrete, time-limited courtesy keyed to Plaintiff's self-supplied documentation, and never addressed the underlying limb-difference disability at all.

**G. The May 2026 Breakdown and IPRO's Belated Admission That No Dialogue Had Occurred**

44. On May 4, 2026, Plaintiff's physician issued a new and revised work-restrictions note in light of Plaintiff's worsening condition and her inability to take time off for treatment. Plaintiff transmitted the note that evening to Defendants Rodriguez, Lecoin, and Ku. (Ex. D.)

45. On May 5, 2026, Defendant Ku acknowledged receipt and stated only that IPRO would "review it and notify [Plaintiff] once a determination has been made." On the morning of May 6, 2026, having heard nothing, Plaintiff emailed again, noting that her condition was "worsening" and asking "where we stand." Later that morning, Defendant Rodriguez replied that the request was "approved as outlined in the note provided" and stated — for the first time in the more than twenty months since Plaintiff's September 17, 2024 disclosure — that she "will be reaching out … to schedule time to engage in the interactive process to gain a better understanding of [Plaintiff's] situation in relation to accommodations we can explore." (Ex. D.)

46. That belated promise to "schedule time to engage in the interactive process" was itself an admission that no such process had previously occurred.

47. On May 21, 2026, Plaintiff and Defendant Rodriguez held the call that IPRO had promised. On May 26, 2026, Plaintiff sent Rodriguez a detailed written recap of that call. On May 28, 2026, Rodriguez emailed Plaintiff acknowledging receipt and stating she would "respond shortly with any corrections/updates to the recap." Upon information and belief, IPRO never disputed the accuracy of Plaintiff's recap. (Ex. F.)

48. Plaintiff's contemporaneous May 26, 2026 recap records that, twenty months after Plaintiff's disclosure: Rodriguez "w[as] not familiar with [Plaintiff's] earlier disclosures or [her] prior conversations with IPRO about [her] disability"; "most of [the] time was spent with [Rodriguez] asking [Plaintiff] for information rather than offering any options"; Rodriguez "w[as]n't sure what [Plaintiff's] current job duties are" and "didn't know how much typing [the] role actually requires"; the "only accommodation" in place was the doctor's case-volume restriction, with "no modification of typing requirements, no assistive software, and no adjustment of duties"; and Rodriguez could offer only to "look into dictation software" and to "look into whether there is another department [Plaintiff] could work in." (Ex. F.)

49. As of the filing of this Complaint, IPRO has never (i) conducted a good-faith cooperative dialogue addressing Plaintiff's underlying limb-difference disability; (ii) issued any written final determination identifying any accommodation granted or denied, as N.Y. Executive Law § 296(3)(b) requires; or (iii) implemented any structural accommodation for that disability —

9

Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

such as assistive or dictation software, ergonomic equipment, modification of typing or productivity requirements, restructuring of marginal functions, or reassignment to a vacant position — beyond the short-term, physician-keyed case-count limits described above.

## H. IPRO's Coordinated Workers'-Compensation Maneuver

50. Plaintiff, through counsel, served IPRO with a Notice of Representation on May 11, 2026, identifying her disability-discrimination, accommodation, cooperative-dialogue, and retaliation claims. (Ex. G.) On May 26, 2026, the undersigned conferred with IPRO's counsel and made clear that Plaintiff's discrimination and accommodation claims are separate from any workers'-compensation matter.

51. Three days later, on May 29, 2026 — and eighteen days after the Notice of Representation — IPRO's workers'-compensation carrier, The Hartford, unilaterally opened a workers'-compensation claim on Plaintiff's behalf, without consultation with Plaintiff or her counsel, situating the claim in Nevada and assigning a "Date of Loss" of December 3, 2025 — the very date of Plaintiff's formal accommodation request to Defendant Lecoin. Plaintiff did not authorize, agree to, or participate in the opening of that claim.

52. The timing, situs, and selected "Date of Loss" of the Nevada filing — coming on the heels of Plaintiff's Notice of Representation and counsel's pre-suit conference, and pegged to the date Plaintiff first formally sought accommodation — reflect a coordinated effort by IPRO to recharacterize Plaintiff's disability claims as a workers'-compensation matter and to disadvantage her in this action. Plaintiff pleads this conduct as further evidence of IPRO's bad faith and retaliatory animus. The workers'-compensation exclusivity provisions of the Workers' Compensation Law do not bar Plaintiff's statutory discrimination claims.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

Failure to Engage in Cooperative Dialogue in Violation of the NYSHRL
(N.Y. Executive Law § 296(3)(b) — Against IPRO)

53. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

54. Effective October 15, 2018, N.Y. Executive Law § 296(3)(b) makes it an unlawful discriminatory practice for a covered employer to "refuse or otherwise fail to engage in a cooperative dialogue" within a reasonable time with an employee who has requested an accommodation or "who the [employer] has notice may have" a need for an accommodation, on account of disability, among other protected categories.

55. "Cooperative dialogue" is defined as the process by which the employer and the person entitled (or who may be entitled) to an accommodation engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address those needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the employer. N.Y. Exec. Law § 296(3)(b).

Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

Case 1:26-cv-04115   Document 1-1   Filed 07/09/26   Page 12 of 19 PageID #: 16

56. Upon the conclusion of the cooperative dialogue, the employer must provide the requesting person with a written final determination identifying any accommodation granted or denied. N.Y. Exec. Law § 296(3)(b). The duty is triggered by the employer's notice of a potential need for accommodation; it does not depend on any formal request or particular "magic words." See Jacobsen v. N.Y.C. Health & Hosps. Corp., 22 N.Y.3d 824 (2014).

57. IPRO had notice that Plaintiff may have needed an accommodation no later than September 17, 2024, when Plaintiff disclosed her congenital limb difference to Defendant Santiago and expressed concern that it could affect her employment, and again — indisputably — no later than December 3, 2025, when Plaintiff requested accommodation through Defendant Lecoin.

58. IPRO failed and refused to engage in any cooperative dialogue within a reasonable time, or at all, and has never issued the written final determination the statute requires. IPRO's own May 6, 2026 promise to "schedule time to engage in the interactive process," and Defendant Rodriguez's May 2026 admissions that she was unfamiliar with Plaintiff's disclosures and did not know Plaintiff's duties or typing requirements, confirm that no cooperative dialogue ever occurred. (Ex. D, F.)

59. IPRO's violation of § 296(3)(b) was knowing, willful, and undertaken with reckless disregard for Plaintiff's rights. As a direct and proximate result, Plaintiff has suffered and continues to suffer the monetary and non-monetary damages alleged herein.

## SECOND CAUSE OF ACTION

Failure to Provide Reasonable Accommodation in Violation of the NYSHRL
(N.Y. Executive Law § 296(3)(a) — Against IPRO)

60. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

61. N.Y. Executive Law § 296(3)(a) makes it an unlawful discriminatory practice for an employer to refuse to provide reasonable accommodations to the known disabilities of an employee. The NYSHRL is to be construed liberally to accomplish its remedial purposes, and exceptions construed narrowly. N.Y. Exec. Law § 300.

62. IPRO had actual knowledge of Plaintiff's disability no later than September 17, 2024, and actual notice of her formal accommodation request no later than December 3, 2025.

63. With reasonable accommodation — including, without limitation, modification of the daily KPI quotas and typing/productivity requirements, voice-recognition or dictation software, ergonomic equipment, intermittent leave and flexible scheduling for treatment, restructuring of marginal job functions, and/or reassignment to a vacant position — Plaintiff is and at all relevant times was qualified to perform the essential functions of her position. Indeed, IPRO's own Head of Human Resources acknowledged that dictation software and reassignment to another department were potential options she would "look into." (Ex. F.)

64. IPRO refused, and continues to refuse, to provide any such reasonable accommodation for Plaintiff's underlying limb-difference disability, and cannot demonstrate that any such

11

Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

Case 1:26-cv-04115   Document 1-1   Filed 07/09/26   Page 13 of 19 PageID #: 17

accommodation would impose an undue hardship. To the extent IPRO contends that a particular case-count level is an essential function, an employer may not satisfy its accommodation obligation by reference to a single function while ignoring the full range of available accommodations it never explored.

65. IPRO's refusal to accommodate was knowing, willful, and undertaken with reckless disregard for Plaintiff's rights. As a direct and proximate result, Plaintiff has suffered and continues to suffer the monetary and non-monetary damages alleged herein.

## THIRD CAUSE OF ACTION

Disability Discrimination in Violation of the NYSHRL
(N.Y. Executive Law § 296(1)(a) — Against IPRO)

66. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

67. N.Y. Executive Law § 296(1)(a) makes it an unlawful discriminatory practice for an employer to discriminate against an employee in compensation or in the terms, conditions, or privileges of employment because of disability. Since 2019, the NYSHRL has prohibited subjecting an employee to "inferior terms, conditions or privileges of employment" because of a protected characteristic, and conduct need not be "severe or pervasive" to be actionable. N.Y. Exec. Law § 296(1)(h).

68. IPRO discriminated against Plaintiff in the terms, conditions, and privileges of her employment because of her disability, including by imposing the same daily quotas on her one-handed work as on two-handed employees without accommodation; by forcing her to consume her own paid time off and sick leave to treat injuries that IPRO's failure to accommodate caused; and by otherwise subjecting her to inferior terms and conditions of employment as alleged herein.

69. IPRO's discrimination was knowing, willful, and undertaken with reckless disregard for Plaintiff's rights. As a direct and proximate result, Plaintiff has suffered and continues to suffer the monetary and non-monetary damages alleged herein.

## FOURTH CAUSE OF ACTION

Retaliation in Violation of the NYSHRL
(N.Y. Executive Law § 296(7) — Against IPRO)

70. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

71. N.Y. Executive Law § 296(7) makes it unlawful to retaliate or discriminate against any person because she has opposed any practice forbidden under the NYSHRL or because she has filed a complaint, testified, or assisted in any proceeding under the statute.

72. Plaintiff engaged in protected activity, including by disclosing her disability and expressing concern about its effect on her employment, by requesting reasonable accommodation on December 3, 2025 and thereafter, by submitting medical documentation, by seeking the

12

Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

Case 1:26-cv-04115    Document 1-1    Filed 07/09/26    Page 14 of 19 PageID #: 18

cooperative dialogue and written determination the law requires, and by retaining counsel who served a Notice of Representation on May 11, 2026 asserting her rights. (Ex. G.)

73. Following and because of that protected activity, IPRO subjected Plaintiff to materially adverse and retaliatory conduct, including by restricting communications with her, ceasing to return her telephone calls, providing delayed or non-substantive responses, and — three days after counsel's pre-suit conference and eighteen days after the Notice of Representation — participating in the unilateral opening of a Nevada workers'-compensation claim back-dated to the date of her accommodation request, in an effort to recharacterize and disadvantage her disability claims. (Ex. F, G.) Such conduct would dissuade a reasonable employee from making or supporting a charge of discrimination and constitutes inferior terms, conditions, or privileges of employment under N.Y. Executive Law § 296(1)(h).

74. IPRO's retaliation was knowing, willful, and undertaken with reckless disregard for Plaintiff's rights. As a direct and proximate result, Plaintiff has suffered and continues to suffer the monetary and non-monetary damages alleged herein.

## FIFTH CAUSE OF ACTION

Aiding and Abetting in Violation of the NYSHRL

(N.Y. Executive Law § 296(6) — Against the Individual Defendants)

75. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

76. N.Y. Executive Law § 296(6) makes it an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any act forbidden under the NYSHRL, or to attempt to do so.

77. Defendants Santiago, Rodriguez, Lecoin, and Ku each personally participated in the discriminatory conduct alleged herein. Santiago received Plaintiff's disability disclosure and foreclosed any dialogue; Lecoin received the December 3, 2025 accommodation request and neither advanced the dialogue nor responded; Rodriguez and Ku administered Plaintiff's leave and restrictions, required her to deplete her own paid leave for treatment, failed to conduct the cooperative dialogue, and failed to issue any written final determination.

78. The Individual Defendants' conduct was knowing, willful, and undertaken with reckless disregard for Plaintiff's rights. They are jointly and severally liable with IPRO for the resulting damages.

## SIXTH CAUSE OF ACTION

Disability Discrimination and Failure to Accommodate in Violation of

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 — Against IPRO

79. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

80. Section 504 provides that no otherwise qualified individual with a disability shall, solely by reason of her disability, be excluded from participation in, denied the benefits of, or subjected

13

Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

to discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

81. Upon information and belief, IPRO is a recipient of federal financial assistance within the meaning of Section 504 by reason of, among other things, its CMS IDR work and related federal funding arrangements.

82. Plaintiff is an otherwise qualified individual with a disability who, with reasonable accommodation, can perform the essential functions of her position. IPRO discriminated against Plaintiff by reason of her disability, including by failing to provide reasonable accommodation, failing to engage in any interactive process, and subjecting her to disparate terms and conditions of employment, all with deliberate indifference to her federally protected rights.

83. As a direct and proximate result of IPRO's violations of Section 504, Plaintiff has suffered and continues to suffer the monetary and non-monetary damages alleged herein, recoverable without the damages caps applicable to certain other statutes.

## SEVENTH CAUSE OF ACTION

### FMLA Interference in Violation of 29 U.S.C. § 2615(a)(1) — Against IPRO

84. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

85. The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or attempt to exercise any right provided under the Act. 29 U.S.C. § 2615(a)(1). At all relevant times Plaintiff was an "eligible employee" and IPRO a "covered employer."

86. Plaintiff exercised her FMLA rights beginning on or about December 5, 2025. IPRO interfered with those rights, including by (a) failing to notify Plaintiff of any medical-clearance/return-to-work requirement until January 22, 2026, only four days before her scheduled return, thereby creating an artificial barrier to reinstatement; (b) failing to restore Plaintiff to equivalent terms and conditions of employment by refusing to reasonably accommodate her; and (c) requiring Plaintiff to use her own paid time off and sick time for FMLA-eligible medical treatment. (Ex. D, F.)

87. IPRO's violations were willful. As a direct and proximate result, Plaintiff has suffered monetary damages and is entitled to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

## EIGHTH CAUSE OF ACTION

### FMLA Retaliation in Violation of 29 U.S.C. § 2615(a)(2) — Against IPRO

88. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

89. The FMLA makes it unlawful for an employer to discriminate against any individual for exercising or attempting to exercise FMLA rights. 29 U.S.C. § 2615(a)(2).

90. Plaintiff engaged in FMLA-protected activity by taking FMLA leave and submitting supporting medical documentation. In close temporal proximity to that activity, IPRO

14

Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

subjected Plaintiff to the materially adverse actions alleged herein. IPRO's retaliation was willful, entitling Plaintiff to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ti'a O. Rife respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally to the extent permitted by law, and grant the following relief:

(a) A declaratory judgment that Defendants' acts and practices alleged herein violate the NYSHRL, Section 504 of the Rehabilitation Act, and the FMLA;

(b) A permanent injunction requiring IPRO to engage in a documented cooperative dialogue in compliance with N.Y. Executive Law § 296(3)(b), to issue a written final determination, and to implement permanent reasonable accommodations for Plaintiff's disabilities, and enjoining Defendants from further unlawful practices;

(c) Compensatory damages, in an amount to be determined at trial, for Plaintiff's monetary losses, physical pain and suffering, emotional distress, mental anguish, and humiliation;

(d) Back pay, including the value of paid time off and sick time wrongfully consumed, lost overtime and benefits, and out-of-pocket medical expenses, plus prejudgment interest;

(e) Front pay or, in the alternative, restoration of accrued paid time off and sick time;

(f) Punitive damages under N.Y. Executive Law § 297(4)(c)(iv) and as otherwise permitted by law;

(g) Civil penalties under N.Y. Executive Law § 297(4) and any other applicable statute;

(h) Liquidated damages under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii);

(i) Reasonable attorneys' fees and costs under N.Y. Executive Law § 297(10), 29 U.S.C. § 794a(b), 29 U.S.C. § 2617(a)(3), and any other applicable statute;

(j) Leave to amend to add claims under the Americans with Disabilities Act upon issuance of a Notice of Right to Sue; and

(k) Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to N.Y. CPLR § 4102, Plaintiff demands a trial by jury on all issues so triable.


Dated: New York, New York

June 10, 2026


Respectfully submitted,


15

Case 1:26-cv-04115    Document 1-1    Filed 07/09/26    Page 17 of 19 PageID #: 21

**JOYA LAW FIRM**

By: _____
Kamran Joya, Esq.
Attorney Registration No. 6169411
175 Greenwich Street, 38th Floor
New York, New York 10007
Tel: 415-302-9437
Email: kamran@joya.law
Attorneys for Plaintiff Ti'a O. Rife

16

Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

## VERIFICATION

I, Ti'a O. Rife, am the Plaintiff in the above-captioned action. I have read the foregoing Verified Complaint and know the contents thereof. The same is true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

I affirm this 10th day of June, 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law. See N.Y. C.P.L.R. 2106.

*Tia Rife*

_____

TI'A O. RIFE

17

Doc ID: 7a320cb6d6ea610fddc96b60de39a1d30588a23c

Case 1:26-cv-04115   Document 1-1   Filed 07/09/26   Page 19 of 19 PageID #: 23

**✕ Dropbox** Sign

Audit trail

| | |
|---|---|
| Title | Summons and Verified Complaint - Rife v IPRO (Nassau County)... |
| File name | Summons%20and%20V...20For%20Signi.pdf |
| Document ID | 7a320cb6d6ea610fddc96b60de39a1d30588a23c |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| ⟳ SENT | **06 / 10 / 2026** 16:22:39 UTC | Sent for signature to Ti'a Onisha Rife (rifetia@gmail.com) by services@clio.com acting on behalf of kamran@joya.law IP: 4.71.142.146 |
| ◎ VIEWED | **06 / 10 / 2026** 16:25:51 UTC | Viewed by Ti'a Onisha Rife (rifetia@gmail.com) IP: 174.234.78.156 |
| ⤸ SIGNED | **06 / 10 / 2026** 16:26:13 UTC | Signed by Ti'a Onisha Rife (rifetia@gmail.com) IP: 174.234.78.156 |
| ✓ COMPLETED | **06 / 10 / 2026** 16:26:13 UTC | The document has been completed. |

Powered by **✕ Dropbox** Sign